**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**REBEKA SNEGON and ROBERT COLONTINO,**
**Plaintiffs,**

v.

**BRYAN DICKERSON, DANIEL NEWMAN, PABLO LOPEZ, KEVIN BATZEL, ROBERT KURILLA, JOHN DOE, JANE DOE and THE TOWNSHIP OF BRICK**
**Defendants.**

Civil Action No. _____

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF**
**(Jury Trial Demanded)**

RECEIVED

FEB 0 2 2026

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

---

## INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. § 1983 to redress the unconstitutional conduct of Defendants, who, acting under color of state law, violated Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

2. Plaintiffs facilitated a private Christian homeschooling pod in Brick Township, New Jersey, which gathered peacefully at a privately leased location with other like-minded families to direct their children's education, including parent-led instruction, in accordance with their religious, moral, and parental values.

3. The Supreme Court has recognized the fundamental rights of parents to direct the upbringing and education of their children.

4. The Supreme Court has also affirmed the right of families to educate their children in accordance with their religious beliefs.

5. Government actions that are arbitrary and irrational and treat similarly situated persons unequally may violate the Equal Protection Clause of the Fourteenth Amendment.

6. Defendants further violated Plaintiffs' rights under the Fourth and Fourteenth Amendments by obtaining and executing an administrative search warrant lacking specificity, and procedural protections, thereby unconstitutionally intruding upon Plaintiffs' private property and activities.

7. This case is further supported by the official transcript of a February 23, 2023 hearing before the Ocean County Construction Board of Appeals, during which Defendant Daniel Newman made inflammatory, disparaging, and punitive statements about Plaintiffs' educational activities. These included calling for immediate closure of the premises, urging retroactive daily fines, and making punitive statements about Plaintiffs' educational activities, despite no due process. The remarks, preserved in a written Rider to Decision, exemplify Defendants' retaliatory motive and disregard for Plaintiffs' constitutional rights.

8. Plaintiffs also seek relief under the New Jersey Constitution, including Article I, Paragraphs 1 and 2, which prohibit arbitrary government action and protect the rights to assemble and seek redress.

---

## JURISDICTION AND VENUE

9. This action arises under the United States Constitution and federal law, including 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

10. Venue is proper in this district under 28 U.S.C. § 1391(b), as the events giving rise to this action occurred within the District of New Jersey.

---

## PARTIES

a. Plaintiff Rebeka Snegon, acting pro se, exercising her right to property in New Jersey and an organizer of the private Christian homeschooling pod referenced herein.

b. Plaintiff Robert Colontino, acting pro se, exercising his right to property in New Jersey and a co-organizer of the Private Christian homeschooling pod referenced herein.

c. Defendant Bryan Dickerson, in his individual and official capacity as a municipal official, Code Enforcement Suervisor, employed by Brick Township and acted under color of law in all relevant actions.

d.    Defendant Daniel Newman, in his individual and official capacity as a former municipal official, Construction Code Official, formerly, employed by Brick Township and acted under color of law in all relevant actions.

e.    Defendant Township of Brick, is a municipal government entity responsible for the actions of its officials, agents, and departments.

f.    Defendant Pablo Lopez, in his individual and official capacity as a municipal official, Code Enforcement Officer, employed by Brick Township, and acted under color of law in all relevant actions.

g.    Defendant Kevin Batzel, in his individual and official capacity as a Chief of the Brick Township Bureau of Fire Safety, who at all times acted under color of law in all relevant actions.

h.    Defendant Robert Kurilla, in his individual and official capacity as  Fire Marshal for the Brick Township Bureau of Fire Safety, who at all times acted under color of law in all relevant actions.

i.    Defendants John Doe 1-5 are unidentified individuals employed by or acting on behalf of Brick Township who, at all times relevant, acted under color of law to violate Plaintiffs' constitutional rights. Plaintiffs will amend this Complaint once these individuals are identified through discovery.

j.    Defendants Jane Does 1-5 are unidentified individuals employed by or acting on behalf of Brick Township who, at all times relevant, acted under color of law to violate Plaintiffs' constitutional rights. Plaintiffs will amend this Complaint once these individuals are identified through discovery.

## FACTUAL ALLEGATIONS

11. Plaintiffs organized and led a private Christian-based homeschooling pod, meeting with several families to educate their children outside of the public school system while exercising their right to property in New Jersey.

12. The pod met regularly at a privately leased building located at 11 Princeton Avenue, Brick, New Jersey 08724.

13. Activities included parental instruction, shared curriculum resources, and religious-based teaching in a cooperative private setting.

14. At all relevant times, Plaintiffs operated legally under New Jersey homeschooling law, which does not require registration, licensing, or classification as a school.

15. Plaintiffs used Christian-based curricula including 'The Good and the Beautiful' to guide instruction, further demonstrating the religious foundation of their cooperative pod.

16. On or about November 14, 2022, January 12, 2023, and February 12, 2023, Defendants Bryan Dickerson, Pablo Lopez and Daniel Newman, acting under color of law, issued citations and fines to Plaintiffs in connection with their homeschooling activities.

17. Plaintiffs provided several notices to the Township including: Notice of Private Organization, Notice of Right of Guaranteed Assembly, Notice of Private Status, Notice of Misapplied Jurisdiction to Entities Practicing Constitutionally Protected Behavior, Notice to New Jersey Actors Attempting to Gain Jurisdiction Over Private Member Association, Notice of Rights and Authority, and Notice of Constitutionally Protected Behavior. These formal notices were submitted to inform the Township of Plaintiffs' legal status and the protected nature of their educational and religious activities.

18. Despite receipt of these notices, the Township failed to respond to or acknowledge any of them.

19. The Township neither engaged in dialogue, provided a legal rebuttal, nor altered its enforcement approach in light of the legal objections raised, thereby willfully disregarding Plaintiffs' efforts to assert their constitutional protected rights and clarify their private, protected status.

20. These notices included constitutional analysis and case law references, such as *Boy Scouts of America v. Dale* and the concurring opinion of Justice Sandra Day O'Connor, to explain the lawful noncommercial and expressive nature of Plaintiffs' association.

21. At the February 23, 2023 Ocean County Construction Board of Appeals hearing, Daniel Newman testified on the record that he "had not been contacted by the tenants nor had he spoken with them."

22. Prior to the hearing, Plaintiffs had sent multiple written notices directly to Newman and his office, including: Notice of Private Organization, Notice of Right of Guaranteed Assembly, Notice of Private Status, Notice of Misapplied Jurisdiction, Notice to New Jersey Actors Attempting to Gain Jurisdiction Over Private Member Association, Notice of Rights and Authority, and Notice of Constitutionally Protected Behavior.

23. Plaintiffs' notices were received and circulated within the Township, as reflected in internal emails produced via OPRA in which Township officials referenced, mocked, or dismissed Plaintiffs' lawful notices rather than respond to their substance.

24. Newman's false denial of contact misled the Board, undermined the fairness of the proceeding, and reinforced his prejudgment and retaliatory intent to padlock the premises and impose maximum retroactive fines regardless of Plaintiffs' asserted rights and objections.

25. In furtherance of their efforts to suppress Plaintiffs' lawful activities, Defendant Dickerson obtained an administrative search warrant from the Brick Township Municipal Court.

26. On September 27, 2022, Brick Township Police Department responded to a neighbor complaint alleging an "illegal daycare."

27. The responding officer documented that Plaintiff Rebeka Snegon explicitly advised the program was *not* a daycare but a homeschool group, and police made no findings of any violations or hazards.

28. The incident report noted that Plaintiffs were supervising children appropriately and that no illegal activity was observed.

29. The same incident report documented that the neighbor's belief Plaintiffs were "running a day care" was purely speculative and unsubstantiated, and that the complaint arose from a personal dispute rather than any observed safety concern

30. On January 6, 2023, Acting Code Enforcement Supervisor Bryan Dickerson submitted a sworn certification in support of an Administrative Search Warrant.

31. In his certification, Dickerson falsely stated that the second floor "has been used by the Liberty School Association since August 2022 as a school use."

32. This statement was knowingly false or presented with reckless disregard for the truth, as the police incident report had already documented Plaintiffs' explanation that the program was not a school or daycare.

33. Dickerson additionally cited a civil landlord-tenant action filed by Winter Investments as "evidence" that the premises were being operated as an unlawful school, despite such filings having no legal relevance to determining probable cause for an administrative warrant.

34. Dickerson asserted there were "dangers to health and safety" and that the building was "now being used as a school," despite having no firsthand inspection, no observed hazards, no complaints from parents, and DCF "allowing the township to take the lead on this particular case".

35. On January 18, 2023, the Municipal Court issued an administrative search warrant.

36. The warrant was obtained and executed through materially false statements, omissions, and mischaracterizations of Plaintiffs' lawful homeschool activities.

37. Following the warrant, the Brick Township Construction Office, Fire Bureau, Code Enforcement, and Zoning Office collectively issued fines, penalties, stop-use orders, and violation notices, all premised on the false assumption that Plaintiffs were operating a school.

38. No other homeschool pods or similar parent-led groups within Brick Township were subjected to such treatment, demonstrating selective enforcement and discriminatory application of municipal codes.

39. The Township's coordinated actions relied on misrepresentations and retaliatory motivations rather than legitimate regulatory concerns.

40. On or about November 23, 2022, Defendant Bryan Dickerson reported Plaintiffs to the New Jersey Department of Children and Families (DCF) for alleged child neglect. Plaintiffs had no prior allegations or investigations related to child welfare.

41. The DCF initiated an investigation solely based on Dickerson's referral. After review, DCF found all allegations to be unfounded and closed the investigation without further action.

42. Upon information and belief, the report was made in retaliation for Plaintiffs' continued exercise of their First Amendment rights and their resistance to the Township's improper enforcement campaign.

43. On or about February 23, 2023, the Brick Township Construction Board of Appeals convened a meeting at which Construction Code Official Daniel Newman made a series of disparaging and defamatory statements about Plaintiffs and their cooperative homeschool program.

44. Mr. Newman testified that (i) the "tenants opened a school on the second floor" even though the property was zoned B-2 (multi-business), (ii) the use was therefore "clearly not permitted in the zone," and (iii) he was "pursuing closure of the premises in court" and "would be happy to padlock the door today" if authorized.

45. This false testimony demonstrated prejudgment and deprived Plaintiffs of an impartial hearing, as required under due process principles

46. Mr. Newman further urged the Board to impose the maximum penalties against each Plaintiff; specifically $2,000.00 for performing work without a permit and an additional $2,000.00 per day for every day the premises was occupied without a certificate of

occupancy, retroactive to February 1, 2023; while expressly recommending that no penalties be levied against the landlord.

47. These public statements, made without Plaintiffs' presence or an opportunity to respond despite Plaintiffs' inquiry to participate, demonstrate Defendants' retaliatory intent, amplify Plaintiffs' reputational harm, and further evidence the Township's pattern of arbitrary and discriminatory enforcement.

48. The full transcript of the February 23, 2023 Brick Township Construction Board of Appeals hearing includes statements made by Defendants Daniel Newman and other officials advocating for immediate closure and retroactive fines, and making various public accusations about safety and code violations in the presence of the Board.

49. These remarks, preserved in the complete Rider transcript, illustrate a coordinated and retaliatory campaign of enforcement rooted in hostility toward Plaintiffs' constitutionally protected conduct and parental autonomy, and caused lasting reputational and emotional harm.

50. Moreover, these statements; made publicly, emphatically, and without qualification; further indicate that Defendants had already reached a conclusion about Plaintiffs' guilt and the necessity of severe penalties well in advance of any neutral or legal determination.

51. The Defendants' intent to punish Plaintiffs was expressed long before trial, depriving Plaintiffs of their right to a fair and unbiased adjudication.

52. This conduct is directly contrary to due process principles requiring neutrality and an open mind in administrative and judicial proceedings but instead resulted in a coordinated and retaliatory campaign of enforcement rooted in hostility toward Plaintiffs' constitutionally protected conduct and parental autonomy, and caused lasting reputational and emotional harm.

53. On or about October 7, 2022, Defendant Bryan Dickerson directly contacted an official with the New Jersey Department of Children and Families and attempted to persuade her to testify against Plaintiffs regarding their homeschool pod.

54. The email further confirmed the use of covert surveillance by Township officials, including plans to monitor Plaintiffs' property while attempting to avoid detection, as well as coordinated communications with DCF and efforts to pressure Plaintiffs' landlord toward eviction.

55. These communications took place after the DCF had already opened an investigation, and after Plaintiffs had asserted their constitutionally protected rights to local officials providing direct evidence of retaliatory motive and abuse of state authority.

56. Plaintiffs have obtained emails from Township officials that confirm receipt of Plaintiffs' lawful constitutional notices; including notices of private status and religious assembly; but mock or dismiss them rather than address them through proper legal channels, showing willful disregard for Plaintiffs' protected rights and reinforce Defendants' retaliatory motive.

57. Plaintiffs also obtained emails in which the landlord's attorney directly communicated with Township officials and requested their aid in pursuing eviction efforts against Plaintiffs.

58. These communications suggest coordinated efforts between private and public actors to suppress Plaintiffs' lawful religious and educational assembly; further supporting Plaintiffs' claims of retaliation, deprivation of due process, and potentially impermissible conspiracy under color of state law.

59. Plaintiffs also obtained email correspondence showing that Defendant Bryan Dickerson, while acting in his official capacity for Brick Township, contacted officials in Howell Township; the unrelated municipality where Plaintiff Rebeka Snegon resided with her parents; to inquire about her rental Certificate of Occupancy status.

60. This inquiry had no legal connection to the educational activities taking place in Brick Township and constituted an overreach into Plaintiffs' personal residential affairs, providing further evidence of retaliatory intent, abuse of authority, and a coordinated effort to harass and intimidate Plaintiffs.

61. Plaintiffs further obtained email correspondence dated November 10, 2022, in which Defendant Bryan Dickerson, while acting in his official capacity, described Plaintiffs' lawful homeschooling pod as an "illegal business" in an email to a third-party bank employee across the street from the leased premises.

62. This language, which was used without any formal legal determination or adjudication, reflects retaliatory animus and deliberate mischaracterization of Plaintiffs' constitutionally protected activities.

63. The email further evidences ongoing surveillance efforts and reputational damage caused by Defendants' communications to third parties.

64. Plaintiffs further obtained email correspondence dated November 28, 2022, in which Defendant Bryan Dickerson sent purported "evidence" to the New Jersey Department of

Children and Families (DCF) in an effort to imply premature stigmatization without legal process.

65. This characterization was made unilaterally, prior to any legal classification or adjudicatory determination, and reveals Defendants' improper assumptions and efforts to frame Plaintiffs' constitutionally protected activity as unlawful.

66. On or around October 26, 2022, the Brick Township Fire Bureau issued administrative fines totaling $10,000 exclusively in Plaintiff Rebeka Snegon's name.

67. This represented a deviation from all prior notices, which consistently named both Plaintiffs, Rebeka Snegon and Robert Colontino, jointly.

68. The unilateral issuance of penalties solely against Rebeka Snegon followed Plaintiffs' assertion of their legal rights and opposition to prior enforcement efforts by the Township.

69. This shift in enforcement supports an inference of retaliatory intent and/or selective enforcement against Plaintiff Snegon, aimed at discouraging further protected activity and punishing her for lawful advocacy.

70. On or about November 28, 2022, Defendant Bryan Dickerson sent an email to officials at the New Jersey Department of Children and Families in which he disparaged Plaintiffs as "uncooperative," dismissed their constitutional defenses as obstructive, and forwarded internal documents; such as a formal Notice of Misapplied Jurisdiction, to support enforcement actions.

71. The email was sent despite Plaintiffs' pending legal proceedings and in direct response to their assertion of First and Fourteenth Amendment rights; further confirming coordination with the landlord to facilitate eviction and contained legally prejudicial language.

72. On or about January 13, 2023, Defendant Bryan Dickerson sent an internal email describing a visit to Plaintiffs' leased premises in which he and another official conducted covert surveillance of minor children exiting the building.

73. This surveillance was conducted without notice, a warrant, or any legal process, and it targeted the children of a homeschooling group engaged in constitutionally protected activities.

74. In the email, Dickerson counted and tracked the number of children, identified specific children by association with Plaintiff Rebeka Snegon, and speculated on her relationship to the children without any legitimate basis; in which the conduct constitutes an unreasonable search and surveillance in violation of the Fourth and Fourteenth Amendments and further evidence of retaliatory animus against Plaintiffs.

75. Plaintiffs further obtained internal correspondence dated February 7, 2024, in which Defendant Bryan Dickerson described court proceedings involving Plaintiffs in a disparaging tone, mocked Plaintiffs' litigation strategies, and referred to their legal defenses as "bizarre."

76. The email also highlights the Township's internal awareness of the unusual decision to split Plaintiffs' case into three separate trials; Code Enforcement, Construction, and Fire Safety; thereby increasing the litigation burden justification.

77. The informal commentary and unnecessary editorializing further reinforce Defendants' retaliatory intent and lack of neutrality in their enforcement approach.

78. Plaintiffs further obtained email correspondence dated February 8, 2023, in which Defendant Bryan Dickerson, while acting in his official capacity, referred to Plaintiffs sarcastically as "our friends at Liberty School" while discussing preparations for upcoming code court proceedings.

79. The informal tone and disparaging characterization of Plaintiffs in internal government communications further demonstrate retaliatory intent, lack of neutrality, and ongoing bias by Township officials.

80. This communication, sent during active legal enforcement, adds to the pattern of non-neutral conduct targeting Plaintiffs' protected activities.

81. On or about November 16, 2022, Defendant Bryan Dickerson emailed a third-party resident, Henry Underhill, disclosing that Liberty School representatives had appeared in municipal court but adjourned as to wait for the property owner to formally evict them.

82. This confirms that township officials were actively coordinating the plaintiffs' eviction and publicly disseminating private legal information in furtherance of their enforcement campaign.

83. On or about November 1, 2022 Defendant Bryan Dickerson emailed a third party resident, Henry Underhill, Acting Code Enforcement Supervisor, sent an email to a local resident again prematurely applying stigmatization prior to any adjudication or judicial ruling.

84. This stigmatizing and prejudicial characterization was issued before any finding of wrongdoing by a court and was part of a pattern of coordinated retaliatory actions taken by municipal officials against Plaintiffs for engaging in religious assembly and expression.

85. Defendants' statements were disseminated to the public prior to any court adjudication, were false or misleading, and were made with reckless disregard for Plaintiffs' constitutional rights and standing under New Jersey homeschooling law.

86. As a direct result of Defendants' coordinated campaign against Plaintiffs, including the public labeling of Plaintiffs as an "illegal school" and "illegal business", the issuance of summonses, and communications with local residents, Plaintiffs suffered reputational harm, including diminished community trust.

87. On November 28, 2022, Defendant Bryan Dickerson sent an email to the New Jersey Department of Children and Families (DCF), stating that the municipal code case against Plaintiffs had been "adjourned pending the outcome" of an unrelated civil landlord-tenant matter.

88. The email further described Plaintiffs as "uncooperative" and accused them of invoking the U.S. and New Jersey Constitutions "to justify their actions." This communication occurred while municipal enforcement efforts remained pending, and while Plaintiffs were actively asserting First Amendment rights.

89. The decision to delay municipal prosecution based on an unrelated eviction case was irregular and prejudicial, contributing to prolonged legal uncertainty and reputational harm.

90. After Plaintiffs relocated their homeschool group to Fellowship Chapel in Brick Township, Defendants, including Bryan Dickerson and the Fire Bureau, continued to surveil and target Plaintiffs' activities.

91. Within days of relocation, Township officials began issuing new zoning and fire citations to Fellowship Chapel and more to the Plaintiffs, directly relating to Plaintiffs' continued gatherings.

92. These actions were undertaken without prior inspections, or incident, and appeared solely in response to Plaintiffs' relocation; further demonstrating a pattern of retaliatory enforcement.

93. Defendants' decision to follow Plaintiffs to a new location and initiate similar enforcement efforts underscores the intent to suppress Plaintiffs' constitutional rights rather than neutrally enforce code provisions.

94. After Plaintiffs began meeting at Fellowship Chapel, Defendants Bryan Dickerson and Daniel Newman, issued citations to the church and informed church representatives that fines would continue unless Plaintiffs' group vacated the premises.

95. Upon information and belief, Defendants issued these threats and fines to retaliate against Plaintiffs and intimidate third parties from associating with them or supporting their lawful activities.

96. The Fire Bureau's decision to issue enforcement actions and substantial civil penalties solely in the name of Plaintiff Rebeka Snegon, while omitting co-organizer Robert Colontino, who was equally involved in the alleged conduct, illustrates arbitrary and selective enforcement. In the same zoning enforcement cases, citations were issued jointly or not at all, suggesting inconsistent application of agency discretion.

97. On December 1, 2025, Plaintiff Rebeka Snegon submitted a formal request under New Jersey's Open Public Records Act (OPRA) to the Brick Township Fire Bureau, at the email listed on their OPRA form located on their website; bureau@brickfire.org, seeking copies of email correspondence from Fire Chief Kevin Batzel and Fire Marshal Robert Kurilla.

98. This request was made in good faith to obtain evidence relevant to the Township's ongoing targeting of Plaintiffs through zoning, fire, and construction code enforcement.

99. On December 11, 2025, Plaintiff Rebeka Snegon sent a follow up email to Brick Township Fire Bureau at bureau@brickfire.org.

100. On December 12, 2025, Plaintiff Rebeka Snegon sent a follow up on OPRAmachine.com

101. On December 12, 2025, Plaintiff Rebeka Snegon received an improper OPRA denial from the Brick Township Fire Bureau. The denial mischaracterized the request and asserted deficiencies that did not exist.

102. This denial represents an additional instance in a pattern of obstructive and retaliatory conduct by Township departments, intended to withhold records necessary for Plaintiffs to defend against municipal enforcement actions and to conceal improper coordination between Fire Safety, Code Enforcement, and Zoning officials.

103. This delay further obstructs Plaintiffs' access to public information and supports the broader pattern of selective enforcement, concealment, and retaliation by Township officials.

104. On December 17 , 2025 Plaintiff Robert Colontino submitted a formal request under New Jersey's Open Public Records Act (OPRA) to the Brick Township Fire Bureau, at the email listed on their OPRA form located on their website; bureau@brickfire.org, seeking copies of email correspondence from Fire Chief Kevin Batzel and Fire Marshal Robert Kurilla.

105. On December 19, 2025 Plaintiff Robert Colonino received an improper OPRA denial from the Brick Township Fire Bureau.

106. The response from the Brick Township Fire Bureau sent to Plaintiff Robert Colontino used identical boilerplate language and citations to Plaintiff Rebeka Snegon's OPRA request denial.

107. On December 22 2025, Plaintiff Robert Colontino sent an email in response to Brick Township Fire Bureau, stating that the request did meet the guidelines of compliance for OPRA.

108. On December 31, 2025 Brick Township Fire Bureau sent another denial, which was the same original denial, unaltered from Plaintiff Rebeka Snegon's OPRA request and Plaintiff Robert Colontino's OPRA request.

109. These categorical denials reflect a municipal custom of obstructing access to records, depriving Plaintiffs of information needed for defense and evidencing retaliatory intent.

## CLAIMS FOR RELIEF

### Count I: Violation of First Amendment – Freedom of Assembly and Religion (42 U.S.C. § 1983)

Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

110. Defendants' actions, including issuing citations, obtaining an unlawful warrant, and contacting DCF, were intended to deter or punish Plaintiffs for exercising their First Amendment rights.

111. These actions substantially burdened Plaintiffs' right to assemble for religious and educational purposes.

112. Defendants acted under color of law with intent to suppress constitutionally protected activity.

WHEREFORE, Plaintiffs respectfully request that this Court declare Defendants' actions unconstitutional, enjoin future violations, award compensatory and punitive damages, and grant such other relief as the Court deems just and proper.

## Count II: Violation of Fourteenth Amendment – Due Process and Equal Protection (42 U.S.C. § 1983)

Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

113. Defendants failed to provide procedural due process before enforcing penalties and surveillance.

114. Defendants treated Plaintiffs differently from similarly situated educational or religious groups without rational basis.

115. The Brick Township Fire Bureau issued substantial civil fines solely in the name of Plaintiff Rebeka Snegon, despite the joint operation, co-responsibility, and equal participation of Robert Colontino in all relevant activities.

116. Previous municipal notices regarding the same conduct were addressed to both Plaintiffs jointly.

117. The decision to pursue enforcement actions and monetary penalties against only Ms. Snegon, after months of coordinated legal notice, public advocacy, and constitutional assertions, demonstrates retaliatory and selective enforcement.

118. No rationale has been provided for the exclusion of Mr. Colontino from the same penalties, and the deviation from prior naming conventions supports the inference of targeting.

WHEREFORE, Plaintiffs respectfully request that this Court declare Defendants' actions unconstitutional, enjoin future violations, award compensatory and punitive damages, and grant such other relief as the Court deems just and proper.

## Count III: Violation of Fourth Amendment – Unlawful Search and Seizure (42 U.S.C. § 1983)

Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

119. Defendants obtained and executed an administrative warrant lacking specificity, or procedural compliance.

120. The surveillance of Plaintiffs and minor children without a warrant or consent constituted an unreasonable search.

121. The deliberate adjournment of Plaintiffs' municipal court hearing based on the status of unrelated landlord-tenant litigation constitutes an arbitrary and capricious interference with Plaintiffs' right to timely adjudication and defense.

122. No notice or opportunity to object to this adjournment was provided to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court declare Defendants' actions unconstitutional, suppress all evidence obtained from such search, award damages, and provide other just and proper relief.

**Count IV: Retaliation in Violation of the First and Fourteenth Amendments (42 U.S.C. § 1983)**

Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

123. Defendants' actions, including mockery, agency referrals, and disparagement, were motivated by hostility toward Plaintiffs' exercise of constitutional rights.

124. As part of their retaliatory campaign, Defendants surveilled Plaintiffs' activities at a new location, Fellowship Chapel, and promptly issued new citations to the church hosting Plaintiffs and the Plaintiffs themselves, causing further disruption, fear, and loss of community support.

125. This demonstrates a continuing pattern of retaliation designed to deter Plaintiffs from exercising protected rights.

126. Defendants' actions extended beyond direct enforcement and into third-party coercion. By threatening Fellowship Chapel with escalating fines unless it removed Plaintiffs from its property, Defendants used government authority to chill protected associations and dissuade religious and community support, in direct violation of Plaintiffs' constitutional rights.

127. Defendants used state power to retaliate against protected conduct.

128. Defendants' pattern of retaliatory conduct included but was not limited to:
   a. Conditioning the adjudication of Plaintiffs' alleged code violations on the outcome of a separate civil eviction proceeding, as reflected in Bryan Dickerson's November 28, 2022 email to state officials.

WHEREFORE, Plaintiffs respectfully request that this Court declare Defendants' actions retaliatory and unconstitutional, enjoin further retaliation, award damages, and provide all other appropriate relief.

**Count V: Conspiracy to Violate Civil Rights (42 U.S.C. § 1983)**

Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

129. Defendants, including named municipal officials, fire bureau personnel, zoning officers, and other township agents, entered into a conspiracy and agreement; both tacit and express; to interfere with Plaintiffs' constitutional rights under the First and Fourteenth Amendments, including their rights to free association, religious assembly, due process, equal protection, and protection from retaliation.

130. Defendants conspired with private actors, including the landlord's attorney, to interfere with Plaintiffs' constitutional rights.

131. The Township's decision to delay prosecution of code enforcement matters pending a private eviction was not based on law or public policy, but rather on a coordinated attempt to oust Plaintiffs.

132. This collaboration between Township officials and the landlord constitutes a conspiracy to interfere with Plaintiffs' constitutionally protected activities, in violation of 42 U.S.C. § 1983.

133. Defendants engaged in overt acts in furtherance of this conspiracy, including but not limited to:

   a. Coordinating the issuance of zoning, fire, and code violations at both the original pod location and the subsequent church location;

   b. Threatening Fellowship Chapel with continued enforcement actions unless it severed ties with the Plaintiffs;

   c. Issuing an administrative search warrant under false pretenses or misleading affidavits;

    d. Disseminating disparaging, mocking, and false statements about Plaintiffs to the public and among officials;

    e. Failing to enforce similar zoning or fire code restrictions against comparable educational or religious groups in the township;

    f. Using OPRA denials, delays, and improper redactions to frustrate Plaintiffs' access to key governmental records and communications.

134. There existed a meeting of the minds among certain Defendants; including but not limited to Bryan Dickerson, Pablo Lopez, Daniel Newman, Kevin Batzel, Robert Kurilla, and others named and unnamed; to pursue punitive enforcement against Plaintiffs that exceeded the bounds of normal administrative practice.

135. This conspiracy caused Plaintiffs to suffer specific injuries, including:
    a. Emotional distress and reputational harm;

    b. Financial losses due to forced relocation and legal costs;

    c. Loss of trust among participating families;

    d. Chilling of constitutionally protected educational and religious activities;

    e. Continuing harm from fines and threatened enforcement.

WHEREFORE, Plaintiffs respectfully request that this Court find Defendants liable for conspiracy to violate civil rights, award compensatory and punitive damages, and issue such further relief as the Court deems just and equitable.

**Count VI: Violation of the New Jersey Constitution; Arbitrary and Discriminatory Government Action**

Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

136.  Defendants' actions violated Article I, Paragraph 1 of the New Jersey Constitution, which guarantees all persons the equal protection of the laws and prohibits arbitrary or unreasonable actions by the government.

137.  These actions further infringed Plaintiffs' rights under Article I, Paragraph 2, by punishing their right to peaceably assemble and direct their children's religious and moral education.

138.  As recognized by the New Jersey Supreme Court in *Greenberg v. Kimmelman*, 99 N.J. 552 (1985), arbitrary and unreasonable state action is constitutionally impermissible under Article I, Paragraph 1.

WHEREFORE, Plaintiffs respectfully request that this Court declare the acts of Defendants unconstitutional under the New Jersey Constitution, enjoin further arbitrary enforcement actions, and grant compensatory relief, costs, and any further relief deemed appropriate.

**Count VII: Retaliation and Excessive Enforcement by Fire Bureau**

**(42 U.S.C. § 1983; U.S. Const. amends. I & XIV)**

Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

139.  At all relevant times, the Brick Township Fire Bureau and its officials; including, upon information and belief, Fire Bureau Chief Kevin Batzel and Fire Marshal Robert Kurilla, acted under color of state law and within the scope of their authority. Plaintiffs intend to amend the caption to add any such individuals as named defendants once identified with particularity in discovery.

140.  After Plaintiffs asserted constitutional objections, submitted lawful notices, and challenged the Township's misclassification of their private homeschool association, the Fire Bureau escalated enforcement against Plaintiffs, including repeated notices, threats of immediate closure, and the imposition of administrative fines, culminating in a $10,000 administrative fine for non-payment and coercive demands for a one-year repayment schedule with threats of judgment.

141.  The Brick Township Fire Bureau imposed administrative fines exclusively against Plaintiff Rebeka Snegon while intentionally omitting Robert Colontino, despite his equal participation in all activities that gave rise to the alleged code violations.

142. This sudden deviation from prior practices, where both Plaintiffs were named in municipal enforcement communications, supports an inference of retaliatory motive and viewpoint-based targeting.

143. This selective enforcement was not based on neutral criteria, but rather on Ms. Snegon's role as the lead legal correspondent, her assertion of constitutional defenses, and her public advocacy related to the pod and its activities.

144. The imposition of fines solely against her constitutes arbitrary and capricious enforcement in violation of the Fourteenth Amendment's Equal Protection Clause and constitutes unlawful retaliation for exercising protected rights under the First Amendment.

145. As a direct result of the Defendants' actions, Plaintiff Snegon suffered reputational harm, emotional distress, and financial injury. Plaintiffs are entitled to compensatory damages, punitive damages, and declaratory relief.

WHEREFORE, Plaintiffs respectfully request that this Court declare the acts of Defendants unconstitutional under the New Jersey Constitution, enjoin further arbitrary enforcement actions, and grant compensatory relief, costs, and any further relief deemed appropriate.

## Count VIII: Violation of New Jersey Open Public Records Act (N.J.S.A. 47:1A-1 et seq.)

Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

146. The New Jersey Open Public Records Act (OPRA) requires that public agencies respond to records requests within seven (7) business days. N.J.S.A. 47:1A-5(i).

147. On December 1, 2025, Plaintiffs submitted a lawful OPRA request to the Brick Township Fire Bureau seeking public records related to enforcement actions taken against Plaintiffs.

148. As of the date of this filing, the Township has failed to respond within the statutory deadline, constituting a per se violation of OPRA.

149. The failure to respond further impeded Plaintiffs' ability to investigate and prepare claims related to the Township's conduct and serves as additional evidence of continued obstruction and bad faith.

150.   Plaintiffs believe the requested records may reveal further retaliatory communications and unconstitutional targeting.

151.   The New Jersey courts have held that an agency's failure to timely respond to an OPRA request may subject it to injunctive relief, attorneys' fees, and civil penalties under N.J.S.A. 47:1A-6 and 47:1A-11.

152.   Following Plaintiffs' assertion of their constitutional rights, including submission of legal notices and their continued operation under constitutionally protected activities, the Brick Township Fire Bureau issued administrative fines totaling $10,000.

153.   Unlike all prior notices and penalties, which consistently named both Plaintiffs, Rebeka Snegon and Robert Colontino, this fine was issued solely in the name of Plaintiff Rebeka Snegon.

154.   This deviation from standard enforcement practices was not based on any legal or factual distinction between the Plaintiffs, and was clearly retaliatory in nature.

155.   The Fire Bureau's actions constitute selective enforcement, as similarly situated entities or persons were not subjected to such unilateral targeting, and no rational basis existed for the differentiation.

156.   The imposition of these fines was designed to intimidate and penalize Plaintiff Snegon for her involvement in asserting the group's rights under the First and Fourteenth Amendments, including her participation in legal filings, public complaints, and protected assembly.

WHEREFORE, Plaintiffs request that this Court; Declare Defendants in violation of the Open Public Records Act; Compel immediate production of all requested records; Award statutory penalties, costs, and attorneys' fees under OPRA; Grant such other relief as the Court deems just and proper.

---

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A. Declare that Defendants' actions violated Plaintiffs' constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution;

B. Declare that Defendants' conduct further violated Plaintiffs' rights under the New Jersey Constitution, including Article I, Paragraphs 1 and 2;

C. Enter a permanent injunction enjoining further enforcement, retaliation, or discriminatory treatment against Plaintiffs based on their educational or religious activities;

D. In addition to declaratory and injunctive relief, award compensatory damages, jointly and severally, in an amount to be determined at trial but **no less than $2,200,000**, including:

- **Unlawful enforcement costs, relocation, and administrative burdens – $150,000**

- **Educational program loss– $400,000**

- **Reputational harm and community stigma – $250,000**

- **Interference with parental rights and expressive/religious association – $50,000**

- **Litigation burden and time loss** (2 pro se litigants over 2+ years) – $50,000

- **Destruction of private religious association – $150,000**

- **Procedural due process violations – $100,000**

- **Emotional distress – $1,050,000**

Plaintiffs reserve the right to amend these amounts after discovery and expert evaluation. These figures are not a cap and are intended to provide fair notice of the categories and scope of harm.

E. Award **punitive damages** in the amount of **$250,000**, representing $50,000 per defendant across five named officials/entities, per plaintiff ($500,000 total), based on the coordinated, malicious, and unconstitutional conduct targeting Plaintiffs' exercise of protected rights;

F. Award **nominal damages** for any constitutional violation where compensatory harm cannot be demonstrated;

G. Award **costs of suit**, including attorneys' fees if Plaintiffs retain legal counsel, pursuant to **42 U.S.C. § 1988**;

H. Grant such other and further relief as the Court deems just and proper.

---

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury on all claims so triable.